IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TAMERA J. McLAUGHLIN, )<br>Administratrix of the Estate of Michael )<br>E. McLaughlin, Deceased, )<br>    )<br>    Plaintiff, )<br>    )<br>    v.   )<br>    )<br>NEWARK PAPERBOARD PRODUCTS, )<br>    )<br>    Defendant. ) | 02: 04cv1648 |

**MEMORANDUM OPINION AND ORDER OF COURT**

September 5, 2006

Before the Court for disposition is the MOTION FOR SUMMARY JUDGMENT, with brief in support filed by Defendant Newark Paperboard Products (*Document Nos. 29 and 30, respectively*), the BRIEF IN OPPOSITION TO SUMMARY JUDGMENT filed by Plaintiff, Tamera J. McLaughlin, Administratrix of the Estate of Michael E. McLaughlin, Deceased (*Document No. 42*), the REPLY TO PLAINTIFF'S BRIEF IN OPPOSITION TO SUMMARY JUDGMENT filed by Defendant (*Document No. 47*), and the REPLY IN OPPOSITION TO SUMMARY JUDGMENT filed by Plaintiff (*Document No. 53*).

The issues have been fully briefed and the matter is ripe for disposition. After a thorough review of the motion, the brief in support, brief in opposition, reply brief in support, reply brief in opposition, the record, and applicable case law, the Motion will be denied.

**PROCEDURAL BACKGROUND**

On October 28, 2004, Michael E. McLaughlin ("McLaughlin") initiated this action against his former civilian employer, Newark Paperboard Products ("Defendant" or "Newark"),

in which he alleged that Newark had discriminated against him because of his military status, in violation of the Uniform Services Employment and Reemployment Rights Act of 1994 ("USERRA"), 38 U.S.C. §§ 4301-4333, when it terminated his employment on August 27, 2001, the first day he returned to work following two weeks of National Guard duty.

McLaughlin, a Lieutenant Colonel in the Pennsylvania Army National Guard, was on active duty in Iraq from June 2005 until he was killed in action on January 5, 2006. By Order of Court dated March 3, 2006, Tamera J. McLaughlin, Administratrix of the Estate of Michael E. McLaughlin, Deceased, ("Plaintiff"), was substituted as the proper party plaintiff for all further proceedings in this matter.

Defendant has filed the instant motion for summary judgment in which it contends that summary judgment is appropriate because (i) Plaintiff has not established a *prima facie* case by showing that McLaughlin's military status or service was a motivating factor in Defendant's decision to terminate him; and (ii) in the alternative, Defendant has established that it would have terminated McLaughlin, regardless of his military service, to save the Greenville Plant's relationship with a major customer, American Brass.

Not surprisingly, Plaintiff vigorously argues that summary judgment should not be entered in this matter.

### FACTUAL BACKGROUND

As the law requires, all disputed facts and inferences are resolved most favorable to the Plaintiff. Furthermore, the Court merely provides an abridged summary of facts for the purposes of this Opinion.

In September 1998, McLaughlin was hired as the Greenville, PA, Plant Manager for Defendant. As plant manager, McLaughlin had overall responsibility for the operations of the Greenville Plant, including customer relations, employee relations and administering and enforcing corporate policies and rules.

Plaintiff contends that on multiple occasions McLaughlin's direct supervisor, Steve Landrum ("Landrum"), made derogatory comments about McLaughlin's military service. For example, in the winter of 2000, McLaughlin was deployed to Germany with the Pennsylvania Army National Guard for several weeks. McLaughlin's deployment dates conflicted with an important budget meeting which was scheduled to take place in March 2000. Following McLaughlin's return from deployment in Germany, Landrum told McLaughlin that "at no point would [McLaughlin's] military service interfere with another budget meeting." (Ex. A 22: 18-21, 23:8-17.) The summary judgment record reflects that on at least two more occasions, Landrum stated that McLaughlin's military service could not interfere with future budget meetings. (Ex. A 22:22-25.)

Additionally, the summary judgment record reflects that during a managers' meeting which McLaughlin attended, Philip Jones, Senior Vice President - Converting for the Newark Group, ("Jones"), also stated that McLaughlin's National Guard Duty could not interfere with another budget meeting. (Ex. A 23:1 - 7.)

On July 10, 2001, Ruth Ann Bentley ("Bentley") of American Brass informed McLaughlin that American Brass had a separation problem with a core that the Greenville Plant

had produced. (Ex. A 169: 18-21.)[1] Shortly after receiving the July 10 call from Bentley, McLaughlin and Quality Control Coordinator Molly Ferguson ("Ferguson") traveled to the American Brass facility in Buffalo, New York. During the meeting between McLaughlin, Ferguson, and Bentley, Bob Robinson ("Robinson") of American Brass joined the meeting for "a very brief time." (Ex I 83: 16-19.) Robinson requested a response to the problem "by noon on Friday." After Robinson's departure, McLaughlin, Ferguson, and Bentley continued the meeting. It was agreed that McLaughlin would take the cores back to the Greenville Plant and get back to Bentley regarding Greenville's proposed corrective action.

As requested, McLaughlin responded to both Robinson and Bentley prior to noon on Friday, July 13, 2001. On Monday, July 16, 2001, McLaughlin again telephoned Bentley to verify that she had received the corrective action report, that American Brass had received the replacement cores, and to determine whether there were any additional problems. (Ex. A 183: 16-21, 191: 19-23.) Bentley confirmed receipt of the report and indicated that there were no other quality control issues.

McLaughlin was scheduled for annual two-week military duty on August 8, 2001. The leave was scheduled at a time when the Greenville Plant was experiencing high production demands and adjusting to new equipment. Newark does not send in a replacement for a Plant Manager who is on military leave. (Ex D 98 7-10.)

At the end of July, 2001, Robinson contacted Terry Gibson ("Gibson"), a former Newark salesman, and told him that Newark "was about to lose American Brass as a customer and that he was disgusted and fed up with McLaughlin." Def's Br. at 4.

---

[1] In 2001, American Brass was the Greenville Plant's largest customer.

Gibson informed Philip Jones ("Jones"), Senior Vice President, of Newark of the conversation, who in turn contacted Robinson. After their conversation, Jones instructed Landrum to arrange a meeting with Robinson and investigate Robinson's complaints. The earliest date that Robinson could meet with Landrum was August 6, 2001, two days before McLaughlin was to depart for annual training. At the time McLaughlin departed for military duty on August 8, 2001, no outstanding customer issues with American Brass had been brought either to his attention or anyone else's attention at the Greenville Plant.

According to Defendant, at the August 6, 2001 meeting, Robinson told Landrum and Eric Ashley, the Northern Region Sales Manager for Newark, that McLaughlin was not addressing quality issues, that all McLaughlin did was pay "lip service," and that McLaughlin talked down to him and acted arrogantly.

Until this time, by Defendant's own admission, McLaughlin's performance as the Greenville Plant manager appears to have been acceptable from the time he was hired in September 1998 until the complaints by Robinson were made known. McLaughlin received an annual salary increase for every year in which he was employed by Newark and he received positive reviews from his supervisor, Landrum. During McLaughlin's tenure, the Greenville Plant enjoyed a very good safety record and its sales grew every year under McLaughlin's direction. At the end of July, 2001, only a month before McLaughlin was fired, the Greenville Plant received the second-highest score of any plant in Newark's Northern Region as part of a "Quality Audit" undertaken by Newark.

However, on August 20, 2001, Jones reached the conclusion that if Newark did not terminate McLaughlin, Newark would lose American Brass as a customer. Therefore, Jones

decided that McLaughlin's employment had to be terminated. It was decided that McLaughlin would be terminated on August 27, 2001, the first day he returned from his annual two-week military training with the National Guard.

On Friday, August 24, 2001, Landrum called McLaughlin while he was still on his annual two week military duty. During that conversation, Landrum informed McLaughlin that he would be traveling to the Greenville Plant to meet with McLaughlin at 7:00 a.m. on Monday, August 27, 2001 - the first day McLaughlin was scheduled to return to work.

On Monday, August 27, 2001, Landrum informed McLaughlin that he was being terminated because of a "personality conflict with a customer."

## STANDARD OF REVIEW

Summary judgment should be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Thus, the Court's task is not to resolve disputed issues of fact, but to determine whether there exist any factual issues to be tried. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-49 (1986). The non-moving party must raise "more than a mere scintilla of evidence in its favor" in order to overcome a summary judgment motion. *Williams v. Borough of West Chester*, 891 F.2d 458, 460 (3d Cir. 1989) (*citing Liberty Lobby*, 477 U.S. at 249). Further, the non-moving party cannot rely on unsupported assertions, conclusory allegations, or mere suspicions in attempting to survive a summary judgment motion. *Id.* (*citing Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). Distilled to its essence, the

summary judgment standard requires the non-moving party to create a "sufficient disagreement to require submission [of the evidence] to a jury." *Liberty Lobby*, 477 U.S. at 251-52.

An employee making a USERRA discrimination claim bears "the initial burden of showing by a preponderance of the evidence that the employee's military service was 'a substantial or motivating factor' in the adverse employment action." *Sheehan v. Department of the Navy*, 240 F.3d 1009, 1013 (Fed. Cir. 2001) (*quoting National Labor Relations Bd. v. Transportation Management Corp.*, 462 U.S. 393, 400-01 (1983) abrogated by *Director, Office of Workers' Compensation v. Greenwich Collieries*, 512 U.S. 267 (1994) (on other grounds)).

"If this requirement is met, the employer then has the opportunity to come forward with evidence to show, by a preponderance of the evidence, that the employer would have taken the adverse action anyway, for a valid reason." *Id.*   Unlike the familiar *McDonnell Douglas* framework applied in other discrimination cases, the procedural framework and evidentiary burdens set out in § 4311 shifts both the burden of persuasion and the burden of production to the employer once the *prima facie case* has been established. *Maxfield v. Cintas*, 427 F.3d 544, 551 (8th Cir. 2005).

Therefore, in USERRA actions there must be an initial showing by the employee that military status was at least a motivating or substantial factor in the employer's decision, upon which the employer must prove, by a preponderance of the evidence, that the adverse action would have been taken despite the protected status.

**DISCUSSION**

Section 4311(a) of Title 38, United States Code, provides in relevant part, that any member of the uniformed services "shall not be denied initial employment . . . by an employer on the basis of that membership . . . performance of service, application for service, or obligation." An employer is considered to have engaged in prohibited discrimination under this section if the individual's membership or service in the uniformed services "is a motivating factor in the employer's action, unless the employer can prove that the action would have been taken in the absence of such membership, application for membership, service, application for service, or obligation for service." 38 U.S.C. § 4311(c)(1).

The term "motivating factor" means that if the employer was asked at the moment of the decision what its reasons were and if it gave a truthful response, one of those reasons would be the employee's military position or related obligations. *Robinson v. Morris Moore Chevrolet-Buick, Inc.,* 974 F. Supp. 571, 576 (E.D. Tex. 1997) (*citing Price Waterhouse v. Hopkins*, 490 U.S. 228, 250 (1989) (addressing Title VII gender discrimination claim and related affirmative defense)). In other words, if Defendant Newark "relied upon, took into account, considered, or conditioned its decision" on McLaughlin's reservist status, then the reservist status was a motivating factor. *Robinson,* 974 F. Supp. at 576.

The factual question of discriminatory motivation or intent may be proven by either direct or circumstantial evidence. *Sheehan,* 240 F.3d at 1014. Under USERRA, discriminatory motive may be reasonably inferred from a variety of circumstantial factors (as discrimination is rarely open or notorious), including:

>proximity in time between the employee's military activity and the adverse employment action, inconsistencies between the proffered reason and other actions of the employer, an employer's expressed hostility towards members protected by the statute together with knowledge of the employee's military activity, and disparate treatment of certain employees compared to other employees with similar work records or offenses.

*Sheehan,* 240 F.3d at 1014.

The absence of direct evidence of improper motivation is not fatal to the plaintiff's case. *Tagget v. Eaton Corporation*, 2001 U.S. Dist. LEXIS 18389, *12 (E.D. Mich. 2001).

Defendant contends that summary judgment is appropriate because (i) Plaintiff has not established a *prima facie* case by showing that McLaughlin's military status or service was a motivating factor in Defendant's decision to terminate him; and (ii) in the alternative, Defendant has established that it would have terminated McLaughlin, regardless of his military service, to save the Greenville Plant's relationship with American Brass.

In the instant case, the Court finds that the Plaintiff has produced sufficient evidence to establish a *prima facie* case of discriminatory motive. As noted above, discriminatory motivation may be reasonably inferred from a variety of factors. Plaintiff has presented evidence that Newark supervisors expressed hostility toward McLaughlin with regard to his 2000 leave. Also, Plaintiff has presented evidence which demonstrates that in November 2001, after McLaughlin's termination, Greenville Plant Superintendent Rob Rhodes (the most senior employee onsite while McLaughlin was fulfilling his military duty) was investigated and disciplined by Newark for discriminating against military service members. (Ex. E 128: 1-13; Ex M, DOL 00089; Ex. D 122: 5-8; 122: 21-123:11.)

9

Also, it is undeniable that McLaughlin's termination was within close proximity of his military activity. In fact, McLaughlin was terminated on the first day he returned to work from his military training.

Lastly, the Plaintiff has produced evidence of disparate treatment of certain employees, with similar work records, compared to McLaughlin. For example, Steve Shuford, General Manager of Newark's Winston-Salem North Carolina Plant was demoted, rather than fired, when it was determined that he "was struggling with the plant" and not performing well in his job. Bob Hurd, General Manager for Newark's South Gardiner, Maine, plant was demoted, rather than fired, when it was determined that he "was having difficulty with the technical aspects of his job." When it became apparent that Chuck Roediger, General Manager for Newark's Winston-Salem Plant, "was struggling to deal with the growth of the plant," he was demoted to the position of "Technical Manager" rather than fired. Unlike McLaughlin, none of these General Managers served in the military during their employment with Newark.

The Court finds and rules that these are all factual assertions that present sufficient disagreement to require submission of this case to the jury. In summation, the Court holds that while the Plaintiff may not prevail at trial, the Plaintiff's factual theories are not wholly implausible and that a rational trier of fact might resolve the issues raised by Defendant's motion in favor of the Plaintiff. As such, summary judgment will be denied and this matter will proceed to trial.

## CONCLUSION

For the reasons hereinabove set forth, the Motion for Summary Judgment filed by Defendant, Newark Paperboard Products, will be denied. An appropriate Order follows.

McVerry, J.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TAMERA J. McLAUGHLIN, Administratrix of the Estate of Michael E. McLaughlin, Deceased,  Plaintiff,  v.  NEWARK PAPERBOARD PRODUCTS,  Defendant. | 02: 04cv1648 |

**ORDER OF COURT**

AND NOW, this 5th day of September, 2006, in accordance with the foregoing Memorandum Opinion, it is hereby ORDERED, ADJUDGED AND DECREED that the Motion for Summary Judgment filed by Defendant Newark Paperboard Products is **DENIED**.

BY THE COURT:

s/Terrence F. McVerry
United States District Court Judge

cc: Christy C. Wiegand,
Assistant U.S. Attorney
Email: christy.wiegand@usdoj.gov

Richard I. Thomas, Esquire
Pepper Hamilton
Email: thomasr@pepperlaw.com

James P. Thomas, Esquire
Pepper Hamilton
Email: thomasjp@pepperlaw.com

Michael W. King, Esquire
Stock & Leader
Email: mking@stockandleader.com